IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KULI TEAUPA, an individual, SALOTE TEAUPA, an individual, | ) ) ) | CIVIL NO. 10-00727 JMS-BMK |
| Plaintiffs, | ) ) ) | ORDER (1) GRANTING DEFENDANT U.S. NATIONAL BANK, N.A.'S MOTION FOR |
| vs. | ) ) ) | JUDGMENT ON THE PLEADINGS; (2) DENYING PLAINTIFFS' |
| U.S. NATIONAL BANK N.A., a Business Entity, form unknown; BNC MORTGAGE, INC., a Business Entity, form unknown; INFINITY MORTGAGE COMPANY, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, a Business Entity, form unknown, | ) ) ) ) ) ) ) ) ) ) | "MOTION TO EXTEND SETTLEMENT CONFERENCE AND TO AMEND COMPLAINT"; AND (3) REQUIRING PLAINTIFFS TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED WITHOUT PREJUDICE AS TO NON-SERVED DEFENDANTS |
| Defendants. | ) ) ) | |
| _____ | ) | |

## ORDER (1) GRANTING DEFENDANT U.S. NATIONAL BANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS; (2) DENYING PLAINTIFFS' "MOTION TO EXTEND SETTLEMENT CONFERENCE AND TO AMEND COMPLAINT"; AND (3) REQUIRING PLAINTIFFS TO SHOW CAUSE WHY ACTION SHOULD NOT BE DISMISSED WITHOUT PREJUDICE AS TO NON-SERVED DEFENDANTS

## I. INTRODUCTION

On January 5, 2011, Plaintiffs Kuli Teaupa and Salote Teaupa

("Plaintiffs"), proceeding *pro se*, filed a Second Amended Complaint ("SAC")

against Defendants "U.S. National Bank N.A." (which has appeared as "U.S. Bank,

N.A., as Trustee for the Structured Asset Securities Corporation Mortgage Pass Through Certificates, Series 2006-BC5," and which the court will refer to as "U.S. Bank"); BNC Mortgage, Inc. ("BNC"); Infinity Mortgage Company ("Infinity"); and Mortgage Electronic Registration Systems ("MERS") (collectively, "Defendants"). The SAC alleges federal and state law claims stemming from an August 7, 2006 mortgage transaction concerning real property located at 74-5045 Huaala Street, Kailua-Kona, Hawaii (the "subject property"). It seeks declaratory and injunctive relief, as well as damages and rescission of the mortgage transaction.

U.S. Bank seeks dismissal of the SAC. No other party has appeared in the action. For the reasons set forth below, the court GRANTS the Motion. Given obvious deficiencies as to all Defendants, certain claims are dismissed as to all Defendants.[1]

///

///

---

[1] Although U.S. Bank is the movant, where appropriate the court *sua sponte* dismisses other Defendants for the same reasons set forth by U.S. Bank. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) (upholding dismissal in favor of a party which had not appeared, on the basis of facts presented by other defendants which had moved to dismiss) (citations omitted); *Omar v. Sea-Land Serv.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

## II.  <u>BACKGROUND</u>

**A.     Factual Background**

The court assumes the SAC's factual allegations are true for purposes of this Motion.  *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

According to the SAC, on August 7, 2006, Plaintiffs entered into a loan repayment and security agreement with Infinity for $498,750.  *See* Doc. No. 7, SAC ¶ 2.  Plaintiffs' claims stem from the consummation of this transaction.

Plaintiffs assert, among other allegations, that (1) Infinity qualified Plaintiffs for a loan which it knew Plaintiffs were not qualified for and could not repay, and that Plaintiffs "should have been declined for this loan," *id.* ¶¶ 22, 28, 35; (2) Infinity failed to "adequately underwrite this loan," failed to verify that Plaintiffs could repay the loan, and "placed the Plaintiff[s] into a loan that had a significantly higher interest rate than what was qualified for," *id.* ¶¶ 24, 26, 28; (3) the terms of the transaction were not clear and Defendants never explained the transaction to them, *id.* ¶ 30; (4) the loan was more expensive than alternative financing arrangements for which Plaintiffs could have qualified, *id.* ¶ 22; and (5) Defendants charged excessive or illegal fees.  *Id.* ¶ 32.

Plaintiffs assert that Defendants failed to provide forms and

disclosures required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; the Equal Opportunity Credit Act; the "Fair Lending/Fair Debt Collection Act"; and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq. Id.* ¶¶ 12, 14. Defendants allegedly "intentionally concealed the negative implications of the loan they were offering," *id.* ¶ 19, and "failed to perform their due diligence in investigat[ing] the legal requirements that this loan should have been processed within." *Id.* ¶ 21. The misconduct was such that Plaintiffs were sold "a deceptive loan product" and the acts of deception created an "illegal loan." *Id.* ¶¶ 27, 28. Defendants' acts allegedly were in violation of federal and state law, including bad faith, breach of fiduciary duty, and unfair and deceptive trade practices.

Although unclear, it appears the Note and Mortgage for the subject property were assigned by Infinity to BNC. Thereafter, according to an Assignment of Mortgage recorded on August 31, 2007, MERS, "solely as nominee for BNC," assigned the Mortgage to U.S. Bank on August 23, 2007. *See* Doc. No. 19-4, U.S. Bank Mot. Ex. B.[2] U.S. Bank then instituted judicial foreclosure proceedings against Plaintiffs on January 25, 2010 in the Circuit Court of the Third

---

[2] The court takes judicial notice of the recorded Assignment of Mortgage because it is a public document with no dispute as to authenticity. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (setting forth factors for judicial notice).

Circuit, State of Hawaii, and obtained a Foreclosure Judgment on November 16, 2010. *See* Doc. Nos. 19-5 & 19-6, U.S. Bank Mot. Exs. C & D. The property was purchased at auction by U.S. Bank on January 18, 2011. *See* Doc. No. 19-7, U.S. Bank Mot. Ex. E. It is unclear whether the sale has been confirmed in the state court, as Plaintiffs filed a Notice of Pendency of Action on January 5, 2011 in the current action. *See* Doc. No. 8.

**B.      Procedural Background**

Plaintiffs filed suit on December 9, 2010. Doc. No. 1. The court dismissed the Complaint on December 10, 2010, with leave given to file an Amended Complaint. Doc. No. 4. An Amended Complaint was filed on December 22, 2010, which the court dismissed on December 27, 2010. Doc. No. 6. On January 5, 2011, Plaintiffs filed the SAC, which alleges twelve separate counts, entitled: (1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violations of TILA; (5) Violations of RESPA; (6) Rescission; (7) Unfair and Deceptive Acts and Practices (UDAP); (8) Breach of Fiduciary Duty; (9) "Unconscionability -- UCC-2-3202"; (10) Predatory Lending; (11) Quiet Title; and (12) "Lack of Standing; Improper Fictitious Entity." Doc. No. 7. U.S. Bank filed an Answer on February 16, 2011. Doc. No. 9.

On September 27, 2011, U.S. Bank filed its Motion for Judgment on the Pleadings, Doc. No. 19, seeking dismissal of all counts. The Motion was originally set for hearing on December 12, 2011, and Plaintiffs were specifically notified that an Opposition was due by November 21, 2011. Doc. No. 21. Plaintiffs did not file an Opposition. On December 2, 2011, however, Plaintiffs filed a one-sentence document entitled "Motion and/or Request to Extend Settlement Confrence (sic) and to Amend Complain (sic)," stating that they requested an "extention (sic) [d]ue to family emergency which will take us out of the country" from December 5, 2011 to January 9, 2012. Doc. No. 23. The Motions are appropriate for decision without a hearing under Local Rule 7.2(d).

### III.  STANDARDS OF REVIEW

#### A.      Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ---- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This

tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

The court liberally construes pro se pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7

(S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

## B.     Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]."  *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be

averred generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

## IV. DISCUSSION

Most, if not all, of the arguments raised by U.S. Bank were addressed in several of this court's recent Orders regarding similar complaints.[3] *See, e.g.*, *Ramos v. Chase Home Finance*, --- F. Supp. 2d ----, 2011 WL 3793346 (D. Haw.

---

[3] Multiple complaints have been filed with the court by pro se plaintiffs, all alleging similar causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC.

Aug. 25, 2011); *Hoilien v. Bank of Am.*, 2011 WL 2518731 (D. Haw. June 23, 2011); *Kelly v. Bank of Am.*, 2011 WL 2493048 (D. Haw. June 22, 2011); *Hoilien v. Bank of Am.*, 2011 WL 976699 (D. Haw. Mar. 17, 2011); and *Marzan v. Bank of Am.*, 779 F. Supp. 2d 1140 (D. Haw. 2011). The court draws extensively from these earlier Orders.[4]

## A. Individual Counts of the SAC[5]

### 1. Counts I and II -- Declaratory and Injunctive Relief

U.S. Bank argues, among other things, that Count I (Declaratory Relief) and Count II (Injunctive Relief) fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action. The court agrees that these Counts fail to state a claim.

The court follows the well-settled rule that a claim for "injunctive

---

[4] The SAC also mentions the Equal Opportunity Credit Act, Doc. No. 7, SAC ¶ 12; the "Fair Lending/Fair Debt Collection Act," *id.*; and the Federal Trade Commission Act, *id.* ¶ 41. Plaintiffs, however, assert no claims for relief (*i.e.*, no Counts) for any alleged violations of those federal laws. The Complaint as written therefore fails to state a claim for violations of those statutes. *Cf. Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

[5] Besides challenging the individual Counts of the SAC, U.S. Bank also (1) raises an affirmative defense of res judicata (arguing that individual counts of the SAC are barred because they all could have been raised in the state foreclosure proceedings), and (2) contends that the SAC is barred by the *Rooker/Feldman* doctrine because the claims constitute a de facto appeal of the state court foreclosure judgment. Because the individual Counts fail on the merits, however, the court need not reach these other grounds for dismissal.

relief" standing alone is not a cause of action. *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) (stating that "no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action.

As for declaratory relief, Count I is apparently seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[6] Count I alleges that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contend[] that Defendants did

_____

[6] The Declaratory Judgment Act provides in pertinent part:

> a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

not have the right to foreclose on the Subject Property[.]"  Doc. No. 7, SAC ¶ 44.

Plaintiffs ask the court to declare that "the purported power of sale contained in the

Loan [is] of no force and effect at this time" because of "numerous violations of

State and Federal laws designed to protect borrowers[.]"  *Id.* ¶ 45.  "As a result of

Defendants' actions, Plaintiffs have suffered damages . . . and seek[] declaratory

relief that Defendants' purported power of sale is void[.]"  *Id.* ¶ 46.

Given these allegations, Plaintiffs' declaratory relief claim is not

cognizable as an independent cause of action under the Declaratory Relief Act.

*See Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A

declaratory judgment offers a means by which rights and obligations may be

adjudicated in cases brought by any interested party involving an actual

controversy that has not reached a stage at which either party may seek a coercive

remedy and in cases where a party who could sue for coercive relief has not yet

done so." (citation and quotation signals omitted)).  That is, because Plaintiffs'

claims are based on allegations regarding Defendants' past wrongs, a claim under

the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other

causes of action.  *See, e.g.*, *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at

*8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the]

other claims.'") (citation omitted); *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d

700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action."); *Ruiz v. Mortg. Elec. Registration Sys., Inc*., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment where foreclosure already occurred such that the plaintiff was seeking "to redress past wrongs"); *Edejer v. DHI Mortg. Co.*, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

Accordingly, the court DISMISSES Counts I and II without leave to amend. If Plaintiffs could prevail on an independent claim, the court would necessarily render a judgment setting forth (*i.e.*, "declaring") as such and providing appropriate remedies. Similarly, if injunctive relief is proper, it will be because Plaintiffs prevail -- or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure -- on an independent cause of action. This dismissal is as to all Defendants because Plaintiffs cannot prevail on these Counts as to any Defendant.

### 2. *Count III -- Covenant of Good Faith and Fair Dealing*

Count III is entitled "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing." Plaintiffs allege that every contract imposes a duty

of good faith and fair dealing "in its performance and its enforcement," Doc. No. 7, SAC ¶ 53, and that Defendants "willfully breached their implied duty of good faith and fair dealing" by engaging in the acts alleged in the SAC (such as withholding disclosures or information, and "willfully plac[ing] Plaintiffs in a loan that [they] did not qualify for"). *Id.* ¶ 56.

This claim asserts the tort of "bad faith." *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). But, although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract. *See Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996),] requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action. *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw.

14

2006).  And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed."  *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")).  Hawaii follows this distinction.  *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract activities (failing to provide disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith.  *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d

1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" *Id.* (quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend. *See, e.g.*, *Mirmehdi v. United States*, --- F.3d ----, 2011 WL 5222884, at *6 (9th Cir. Nov. 3, 2011) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile."). This dismissal is as to all Defendants.

///

///

///

### 3.    *Count IV -- TILA*

U.S. Bank argues that Plaintiffs' TILA claims for damages and for rescission are time-barred.[7]  The court agrees.

### a.    *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

---

[7] Count IV primarily alleges violations against Infinity and BNC, although it makes some allegations against "Defendants," Doc. No. 7, SAC ¶¶ 65-68, which would include U.S. Bank.

*Id.* Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiffs' TILA claim for damages is time-barred unless equitable tolling applies -- it was brought over four years after consummation of the loan transaction. The Amended Complaint asserts only that the statute of limitations was tolled "due to Defendants' failure to effectively provide the required disclosures and notices." Doc. No. 7, SAC ¶ 63. This allegation, assumed to be true for purposes of this Motion, is insufficient to satisfy equitable tolling because it would establish no more than the TILA violation itself. *See, e.g.*, *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations."); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("[P]laintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless.").

The SAC pleads no facts indicating that any Defendant prevented

Plaintiffs from discovering the alleged TILA violation or caused Plaintiffs to allow the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Without any factual allegations that support the inference that Plaintiffs did not have a reasonable opportunity to discover the TILA violations, the SAC, even when liberally construed, does not support tolling the statute of limitations. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

Accordingly, the court DISMISSES Plaintiffs' TILA claim for damages against U.S. Bank. Moreover, as to U.S. Bank, the dismissal is without

leave to amend -- Plaintiffs have had three opportunities to attempt to state a claim for a TILA violation against U.S. Bank.  Moreover, given that U.S. Bank was not the original lender and was not assigned the Mortgage until August 23, 2007 -- over a year after consummation of the loan transaction, it would be futile to allow further leave to attempt to state a TILA damages claim against U.S. Bank.  *See, e.g.*, *Mirmehdi*, 2011 WL 5222884, at *6.

Here, however, the court does not *sua sponte* dismiss the TILA claim for damages as to the other Defendants.  In this regard, the one-year statute of limitations in § 1640(e) is an affirmative defense that a defendant has the burden of raising and establishing.  *See, e.g.*, *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *7 (D. Haw. May 13, 2011).  Because no Defendant other than U.S. Bank has officially appeared in the action, no other Defendant has met a burden to raise this affirmative defense.  *See Caniadido v. Countrywide Bank, FSB*, 2011 WL 2470640, at *8 (D. Haw. June 20, 2011) ("As the limitations period is a matter on which a defendant bears the burden, this court does not here sua sponte dismiss the damage claim against [the unserved defendant] on statute of limitations grounds.").[8]

---

[8]  In any event, the record does not reflect that service has been properly made against any other Defendant besides U.S. Bank, and it has been over 120 days since the SAC was filed. Under Federal Rule of Civil Procedure 4(m), if a complaint is not served within 120 days after

(continued...)

### b. Rescission under TILA

As to Plaintiffs' claim for rescission pursuant to TILA, Doc. No. 7, SAC ¶ 79, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]"  15 U.S.C. § 1635(a).  If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).[9] Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913).  That is, the three-year period is not subject to equitable tolling.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).

---

[8](...continued)
filing, absent good cause, the court must dismiss the action without prejudice, or extend the time for service.  Thus, although the court does not dismiss this particular claim against the unserved Defendants based on U.S. Bank's Motion, the claim is subject to dismissal on this other ground.

[9]  A transaction is "consummated" when a consumer becomes contractually obligated. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).

Plaintiffs' TILA claim for rescission is based on an August 7, 2006 loan transaction. Plaintiffs filed this action over four years later. Given that equitable tolling cannot apply to this claim, any amendment seeking rescission under TILA would be futile. And unlike the statute of limitations for a TILA damages claim, which is an affirmative defense, a TILA rescission claim is governed by a statute of repose which "permits no federal right to rescind [under TILA], defensively or otherwise, after the [three]-year period of § 1635(f) has run." *Beach*, 523 U.S. at 419. Section 1635(f) therefore "depriv[es] the courts of *subject matter jurisdiction* when a § 1635 claim is brought outside the three-year . . . period." *Miguel*, 309 F.3d at 1164 (emphasis added). Because this court lacks subject matter jurisdiction over this TILA rescission claim, it dismisses the claim *sua sponte* as to other Defendants besides U.S. Bank.

Accordingly, the court DISMISSES Plaintiffs' claim for rescission pursuant to TILA as time-barred without leave to amend. This dismissal is as to all Defendants. Granting leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6.

### 4. Count V -- RESPA

Count V alleges a violation of RESPA. Specifically, the SAC alleges against all Defendants that "Defendants, and each of them, failed to disclose all

affiliated business arrangements per RESPA 24 C.F.R. § 3500.15." Doc. No. 7, SAC ¶ 74. The SAC also appears to be making a RESPA claim under 12 U.S.C. § 2607, which generally prohibits "kickbacks and unearned fees," as the SAC alleges "[t]he fees for this loan were . . . egregious. This loan required the Plaintiff[s] to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated." *Id.* ¶ 73. Further, Plaintiffs appear to be making a claim under 12 U.S.C. §§ 2605(f) for failure to inform them of a transfer of the servicing of the loan.[10] *See id.* ¶ 75 ("This loan requires that the borrower be informed of intention to transfer the servicing of the loan . . . . There is no evidence that this occurred[.]"). The court addresses each allegation in turn.

### a. Failure to disclose "affiliated business arrangements"

Plaintiffs' RESPA claim based on a failure to disclose affiliated business transactions under 24 C.F.R. § 3500.15 fails. *See Washington v. Nat'l City Mortg. Co.*, 2011 WL 1842836, at *8 (N.D. Cal. May 16, 2011) (rejecting a

---

[10] Title 12 U.S.C. § 2605(b)(1) provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." The notice must be given "to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan[.]" 12 U.S.C. § 2605(b)(2)(A). Likewise 12 U.S.C. § 2605(c)(1) provides that "each transferee of loan servicing" shall also notify the borrower. And 12 U.S.C. § 2605(f) allows a borrower to seek actual damages for a failure to comply with those (and other) sections of § 2605.

claim under § 3500.15 because "Plaintiffs have cited no legal authority nor has the

Court been able to locate any cases holding that a violation of § 3500.15 or [12

U.S.C. § 2607(c)(4)], standing alone, is actionable.").  That is, even if such

disclosures were not made, such a failure is not actionable.

> As *Washington* explains:
>
> [12 U.S.C. § 2607] prohibits kickbacks and referral fees. *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).  However, RESPA creates an exception for affiliated business arrangements which meet the requirements set forth in [12 U.S.C. § 2607(c)(4)]; *see also* 24 C.F.R. § 3500.15 ("[a]n affiliated business arrangement is not a violation of [12 U.S.C. § 2607] and of § 3500.14 if the conditions set forth in this section are satisfied.").  An affiliated business arrangement must be disclosed to the person seeking settlement services.  *See* 12 U.S.C. § 2607(c)(4)(A) (requiring that "a disclosure is made of the existence of such an arrangement to the person being referred"); 24 C.F.R. § 3500.15(b)(1) (specifying contents of the disclosure).

2011 WL 1842836 at *7.  Thus, § 3500.15 "merely provide[s] a safe harbor for

properly disclosed affiliated business arrangements from liability for violations of

[12 U.S.C. § 2607(a) or (b)]."  *Id.* at *8.  If affiliated business arrangements are not

disclosed, it only means that the non-discloser is not protected from potential

liability under 12 U.S.C. § 2607(a) or (b).

///

///

b. *Violation of 12 U.S.C. § 2607*

Plaintiffs' claim that Defendants received "egregious" fees fails as a matter of law -- § 2607 does not prohibit such fees. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 553-54 (9th Cir. 2010) (concluding that § 2607 "cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

Moreover, U.S. Bank asserts that a § 2607 claim is time-barred. Specifically, the statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. The one-year period applies to a claim under § 2607. Title 2 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

Although the Ninth Circuit has not addressed the precise issue, other courts -- including this court -- have found that equitable tolling may apply to a RESPA claim. *See Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw. Nov. 24, 2010) (citing cases).

As with Plaintiffs' claim for damages under TILA, Plaintiffs brought this action well past the applicable statute of limitations. Any § 2607 violation would have occurred in 2006 at loan origination; this action was filed in 2010 -- well past the one-year limitations period. Moreover, the SAC includes no allegations suggesting that equitable tolling may apply.[11]

c.    *Violation of 12 U.S.C. § 2605(b) regarding Notification of Transfer of Servicing Rights*

Plaintiffs' claim under § 2605(f) also fails. Specifically, Plaintiffs' allegation that they were not informed of a transfer of loan servicing fails to state a claim as to U.S. Bank. Sections 2605(b) and (c) apply to "servicers" and the SAC does not allege or imply that U.S. Bank is a "servicer" of the loan. *See, e.g.*, *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009) ("Plaintiff also does not allege how Platinum or Mint meet the statutory definition of 'servicer' and are therefore subject to the duty to notify of a transfer."); *Orzoff v. Mortg. Elec. Registrations Sys., Inc.*, 2009 WL 4643229, at *4 (D. Nev. Mar. 26, 2009) ("Plaintiff's claim must fail because Defendants are not the servicers of the Loans."); *Snider v. B.A.C. Home Loans Servicing LP*, 2011 WL 4479280, at *6 (D.

---

[11] As with Plaintiffs' claim for damages under TILA, the statute of limitations is an affirmative defense that a defendant has the burden of raising. Because no Defendant other than U.S. Bank has entered an appearance, the court does not rely on this ground for dismissing Plaintiffs' RESPA claim against any Defendant other than U.S. Bank. As set forth above, however, there are independent bases to dismiss the RESPA claim as to the other Defendants.

Colo. Sept. 26, 2011) (rejecting § 2605 claim against law firm, reasoning that "[t]he express provisions of § 2605 render clear that the requirements apply primarily to '[e]ach servicer of any federally related mortgage loan' and secondarily to '[e]ach person who makes a federally related mortgage loan.'"). Rather, the SAC alleges that *Infinity* is "a servicing company," Doc. No. 7, SAC ¶ 4, and that it transferred servicing rights to BNC.  *Id.* ¶ 20.

Moreover, as to any other Defendant, the SAC also fails to state a claim because it fails to allege any actual damages resulting from a failure to notify Plaintiffs of the transfer of servicing.  *See Edwards v. Wachovia Mortg.*, 2011 WL 4591907, at *3-4 (S.D. Cal. Oct. 4, 2011) (dismissing § 2605 claim because "Plaintiff has failed to plead non-conclusory factual allegations indicating how he was damaged by the any alleged RESPA violation"); *see also, e.g.*, *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1232 (E.D. Cal. 2010) ("Absent factual allegations suggesting that Plaintiffs suffered actual damages, Plaintiffs' [§ 2605(f)] RESPA claim is insufficiently pled and subject to dismissal.") (citing cases).

Accordingly, the court DISMISSES Plaintiffs' Count V against U.S. Bank without leave to amend.  Granting further leave to amend against U.S. Bank would be futile.  *See Mirmehdi*, 2011 WL 5222884, at *6.  The court *sua sponte*

dismisses this Count as to other Defendants, but such dismissal is with leave to amend as to a claim under § 2605 against Infinity and BNC.[12]

### 5.    *Count VI -- Rescission*

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all of the foregoing reasons:  1) TILA Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy Grounds, each of which provides independent grounds for relief."  Doc. No. 7, SAC ¶ 78.  Like Counts I and II, generally "[r]escission is only a remedy, not a cause of action."  *Bischoff v. Cook*, 118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. App. 2008).  The remedy thus "rises or falls with [the] other claims."  *Ballard*, 2010 WL 5114952, at *8.  Indeed, as alleged here, Count VI specifically acknowledges that it is seeking rescission based upon "independent grounds for relief."  Accordingly, Count VI is DISMISSED without leave to amend.  The dismissal is as to all Defendants.

///

///

---

[12]  In any event, because there is no indication that the SAC has been properly served on Infinity, BNC, or MERS, the action is subject to dismissal without prejudice against those Defendants under Federal Rule of Civil Procedure 4(m).  If necessary, the court will address the conditions of any amendment as to Infinity or BNC if Plaintiffs address the apparent deficiency in service against those Defendants (as explained in the Order to Show Cause below).

### 6.      *Count VII -- Unfair and Deceptive Acts and Practices*

Count VII alleges that all Defendants are liable for Unfair and Deceptive Acts and Practices "by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of [their] home, equity, as well as [their] past and future investment."  Doc. No. 7, SAC ¶ 85.  Plaintiffs allege that Defendants "failed to undergo a diligent underwriting process," failed to disclose matters, should not have approved their loan because they could not afford it, and had "knowledge of these facts, circumstances and risks but failed to disclose them."  *Id.* ¶ 83.  By alleging "Unfair and Deceptive Acts and Practices," Plaintiffs are making a claim under HRS § 480-2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.").

Without more, Plaintiffs' theory of an unfair practice does not state a claim under § 480-2.  In granting summary judgment against a borrower on a § 480-2 claim, this court in *McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), relied on the rule that "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'"  *Id.* at *6 (quoting *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D.

Cal. 2009)).

And, as cited in *McCarty*, ample authority supports this proposition. *See Sheets v. DHI Mortg. Co.*, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan . . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting *Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan")). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. App. 1991). Nothing in the SAC indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claim fails on these bases alone.

U.S. Bank also argues that this claim is barred by the applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a chapter 480 claim "unless commenced within four years after the cause of action accrues"). Because the cause of action here accrued on August 7, 2006, the four-year statute of

limitations has run unless Plaintiff can take benefit of tolling the statute of limitations. *See, e.g.*, *Rundgren v. Bank of N.Y. Mellon*, 777 F. Supp. 2d. 1224, 1230-31 (D. Haw. 2011) (finding that claims brought pursuant to Chapter 480 may take benefit of the fraudulent concealment doctrine to toll the statute of limitations). The § 480-2 claim was filed six months late, and the SAC includes no allegations suggesting that equitable tolling may apply.[13]

Accordingly, Count VII is DISMISSED without leave to amend. Given that Plaintiffs have had three opportunities to attempt to state this claim, granting further leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6. This dismissal is as to all Defendants.

### 7. *Count VIII -- Breach of Fiduciary Duty*

Count VIII alleges, without distinguishing between various Defendants, that Defendants owed Plaintiffs a fiduciary duty and breached that duty by failing "to advise or notify Plaintiffs . . . that Plaintiffs would or had a likelihood of defaulting on the loan." Doc. No. 7, SAC ¶ 88. Defendants also allegedly breached a fiduciary duty owed to Plaintiffs by "exercis[ing] a greater

---

[13] Like Plaintiffs' claims for damages under TILA and RESPA, this statute of limitations is an affirmative defense that a defendant has the burden of raising. Because no Defendant other than U.S. Bank has entered an official appearance, the court does not rely on this ground for dismissing Plaintiffs' Chapter 480 claim against any Defendant other than U.S. Bank. As set forth above, however, there is an independent basis to dismiss the Chapter 480 claim as to the other Defendants.

level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another[.]" *Id.* ¶ 89. Plaintiffs also allege that failure to provide material disclosures "while in the capacity of [Plaintiffs'] Lender" and "fail[ure] to fully comply with TILA and RESPA . . . are violations of a fiduciary responsibility owed to Plaintiffs by Defendants." *Id.* ¶¶ 90-91.

These allegations fail to state a claim against any Defendant. In *McCarty*, this court set forth a myriad of caselaw for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); *Miller v. U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting *Oaks Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D. D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted).

*McCarty*, 2010 WL 4812763, at *5.

Given this rule, Plaintiffs fail to state a claim for breach of fiduciary duty as to any Defendant. As with a § 480-2 claim, nothing in the Amended Complaint alleges "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation. *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.").

Accordingly, Count VIII is DISMISSED without leave to amend. This dismissal is as to all Defendants. Granting leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6.

### 8.    *Count IX -- Unconscionability*

U.S. Bank next argues that Count IX entitled "Unconscionability -- UCC-2-3202" fails to state a claim. Count IX asserts that courts may refuse to enforce a contract or portions of a contract that are unconscionable, Doc. No. 7, SAC ¶ 93, and courts are to give parties an opportunity to present evidence regarding a contract's "commercial setting, purpose and effect" to determine if a

contract is unconscionable. *Id.* ¶ 94. It alleges the following facts:

> Here, based on the deception, unfair bargaining position,
> lack of adherence to the regulations, civil codes and
> federal standards that the Defendants were required to
> follow; coupled with the windfall that the Defendants
> reaped financially from their predatory practices upon
> Plaintiff's [sic], the court may find that the loan
> agreement and trust deed are unconscionable and of no
> force or effect.

*Id.* ¶ 95.

"Unconscionability" is generally a defense to the enforcement of a

contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg.*

*Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)

("Unconscionability may be raised as a defense in a contract claim, or as a legal

argument in support of some other claim, but it does not constitute a claim on its

own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005)

("[U]nconscionability is not a basis for a separate claim for relief."); *see also*

*Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct.

27, 2006) (citing numerous cases for the proposition that neither the common law

or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part

of a different -- that is, independent -- cause of action, such a claim "is asserted to

prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v.*

*HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[14] *Skaggs* dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term. *Id.* Likewise, Count IX fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.

Accordingly, Count IX is DISMISSED without leave to amend. This dismissal is as to all Defendants. Granting leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6.

### 9.  *Count X -- Predatory Lending*

U.S. Bank also challenges Count X entitled "Predatory Lending." Count X repeats a variety of allegations (*e.g.*, failure to disclose terms and conditions or material facts, targeting of unsophisticated persons, unfair loan terms,

---

[14] In *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127 (D. Haw. Dec. 22, 2010), this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

and improper underwriting) that form the basis of other causes of action.

Courts, however, have found that there is no common-law claim for "predatory lending." *See Haidar v. BAC Home Loans Servicing, LP*, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); *Pham v. Bank of Am., N.A.*, 2010 WL 3184263, at *4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending."). To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in another statutory or common-law cause of action such as fraud -- the term "predatory lending" is otherwise too broad. *See Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend -- agreeing that the term is expansive and fails to provide proper notice, where Defendants "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); *see also Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending where plaintiffs failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.' The court is unaware of any such cause of action.").

The court finds these authorities persuasive. Count X fails to state a

cause of action. The court does not mean to imply that "predatory lending" is proper and cannot form the basis of some cause of action. But Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action, and the precise elements of such a claim are undefined. The ambiguous term "predatory lending" potentially encompasses a wide variety of types of alleged wrongdoing. Recognizing a cause of action here would thus fail to provide proper notice. *See Vissuet*, 2010 WL 1031013, at *3.

Accordingly, Count X is DISMISSED. Given that Plaintiffs have had three opportunities to attempt to state a claim based upon wrongdoing alleged as "predatory lending," the court concludes that granting further leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6. This dismissal is as to all Defendants.

### 10. *Count XI -- Quiet Title*

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the Property," Doc. No. 7, SAC ¶ 108, and therefore Plaintiffs are entitled to a declaration that "the title to the Subject Property is vested in Plaintiff's [sic] alone[.]" *Id.* ¶ 109.

The court infers that Plaintiffs are making a claim under HRS § 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another person

who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.").  The court agrees with U.S. Bank that Plaintiffs have not alleged sufficient facts regarding interests of various parties to make out a cognizable claim for "quiet title."  Plaintiffs have merely alleged elements of § 669-1, and thus the Count fails to state a claim.  *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness.  "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'"  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property."  *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL

2757041, at *8 (N.D. Cal. July 9, 2010)).

Applying this law here, which the court finds persuasive, Plaintiffs have not indicated that they have paid their outstanding loan balance, much less that they are able to do so. In short, they fail to state a claim for quiet title.

Accordingly, Count XI is DISMISSED without leave to amend. This dismissal is as to all Defendants. Granting leave to amend would be futile. *See Mirmehdi*, 2011 WL 5222884, at *6.

### 11.  *Count XII -- Lack of Standing (MERS)*

Count XII, entitled "Lack of Standing; Improper Fictitious Entity" fails to state a claim because a claim for "lack of standing" makes no sense against a defendant. Rather, standing is a requirement for a plaintiff in order to proceed in a lawsuit. Count XII alleges generally that MERS is an "'artificial' entity" "designed to circumvent certain laws and other legal requirements dealing with mortgage loans." Doc. No. 7, SAC ¶ 113. Plaintiffs further assert that an assignment of the note or mortgage to MERS is illegal, *id.* ¶ 114, and has no legal standing to foreclose. *Id.* ¶ 117.

The role of MERS was recently explained by the Ninth Circuit in *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th Cir. 2011), as follows:

> MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the

"beneficial interest" in home loans, as well as any
changes in loan servicers. After a borrower takes out a
home loan, the original lender may sell all or a portion of
its beneficial interest in the loan and change loan
servicers. The owner of the beneficial interest is entitled
to repayment of the loan. For simplicity, we will refer to
the owner of the beneficial interest as the "lender." The
servicer of the loan collects payments from the borrower,
sends payments to the lender, and handles administrative
aspects of the loan. Many of the companies that
participate in the mortgage industry -- by originating
loans, buying or investing in the beneficial interest in
loans, or servicing loans -- are members of MERS and
pay a fee to use the tracking system.

*Id.* at 1038-39. In affirming dismissal of a claim for conspiracy to commit fraud

through the MERS system, the Ninth Circuit gave no indication that MERS was

wrongfully "designed to circumvent laws" or that assignments via the MERS

system are illegal.

Moreover, the SAC appears to be alleging that MERS may not

foreclose on their property, or has improperly foreclosed already, because it is not

the holder of their note. Doc. No. 7, SAC ¶¶ 114-15. However, Plaintiffs do not

allege sufficient facts to support such a claim -- they do not allege that MERS has

attempted or is attempting to foreclose on their loan. Indeed, the SAC alleges that

BNC and U.S. Bank are the foreclosing parties. *Id.* ¶ 5.

Accordingly, Count XII is DISMISSED without leave to amend. This

dismissal is as to all Defendants. Granting leave to amend would be futile. *See*

*Mirmehdi*, 2011 WL 5222884, at *6.

**B.      Leave to Amend**

In their December 2, 2011 "Motion and/or Request to Extend
Settlement Confrence (sic) and to Amend Complain (sic)" ("Motion to Amend"),
Doc. No. 23, Plaintiffs apparently seek leave to file a Third Amended Complaint to
address any deficiencies identified in this Order.[15]  As explained when addressing
individual Counts, it would be futile to allow amendment for almost all of the
Counts.

The court is mindful that "[d]ismissal without leave to amend is
improper unless it is clear . . . that the complaint could not be saved by an
amendment," *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009), and that
"a pro se litigant is entitled to notice of the complaint's deficiencies and an
opportunity to amend prior to dismissal of the action."  *Lucas*, 66 F.3d at 248.
Nevertheless, "[t]he district court's discretion to deny leave to amend is
particularly broad where plaintiff has previously amended the complaint.'"
*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir.
2011) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.

_____

[15]  A request for an "extension" of a settlement conference is not necessary.  If Plaintiffs
believe a settlement conference would be productive, they may first contact opposing counsel
and the parties may jointly request a conference from Magistrate Judge Kurren if all parties
agree that court involvement could help resolve issues in this case.

1989)).

As indicated above in addressing individual Counts, Plaintiffs have already had three opportunities to state claims. Their SAC was filed after the Court issued a detailed order explaining particular deficiencies in the First Amended Complaint. *See* Doc. No. 6, Order Dismissing Am. Compl. with Leave to File a SAC. Plaintiffs responded by filing a "form complaint," apparently prepared by a third party, Francha Services, that this court has repeatedly dismissed in other cases. It has been nearly a year since the action was instituted. It is apparent that further amendment would be futile (except for Plaintiffs' claim in Count V under 12 U.S.C. § 2605 against non-served Defendants Infinity and BNC). Accordingly, Plaintiffs' Motion to Amend is DENIED.

As for Count V against non-served Defendants Infinity and BNC, although the court is allowing leave to amend, Plaintiffs must first address whether their action should be allowed to proceed at all as against Infinity and BNC. The court turns to that question.

## C.   Order to Show Cause -- Lack of Service as to Infinity and BNC

Plaintiffs filed the SAC on January 5, 2011, naming U.S. Bank, Infinity, BNC, and MERS as Defendants. Only U.S. Bank has appeared. Nothing in the record indicates that proper service has been made on any other Defendant,

and no other Defendant has entered an appearance.

Federal Rule of Civil Procedure 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

More than 120 days have passed since Plaintiffs filed the SAC. Under Rule 4(m), after providing notice to Plaintiffs, the court must dismiss the action without prejudice unless good cause is shown for the failure to properly serve a complaint.

Accordingly, the court orders Plaintiffs to SHOW CAUSE why this action should not be dismissed without prejudice as to Infinity, BNC, and MERS for failure to serve the SAC. **Plaintiffs' Response to this Order to Show Cause is due on or before January 16, 2012**. If no Response to this Order to Show Cause is filed by January 16, 2012, the action will be dismissed without prejudice as to Infinity, BNC, and MERS.

The court will address the conditions of a potential Third Amended Complaint as to Infinity and BNC (on a claim under 12 U.S.C. § 2605 only), if necessary, after resolving whether the action should be dismissed under Rule 4(m) as to these other Defendants.

# V. CONCLUSION

The Motion for Judgment on the Pleadings by Defendant U.S. Bank, N.A., as Trustee for the Structured Asset Securities Corporation Mortgage Pass Through Certificates, is GRANTED. The Second Amended Complaint is DISMISSED without leave to amend as to claims against U.S. Bank.

This dismissal also applies to the other Defendants (who have not appeared), with two exceptions -- (1) Count IV for damages under TILA is only dismissed as to U.S. Bank because the dismissal is based solely on an affirmative defense that a Defendant must raise on its own behalf, and (2) Count V is dismissed, but the dismissal as to a claim under 12 U.S.C. § 2605 is with leave to amend as to Infinity and BNC.

Nevertheless, by **January 16, 2012**, Plaintiffs must SHOW CAUSE why this action should not otherwise be dismissed without prejudice as to Infinity, BNC, and MERS for failure to serve the Second Amended Complaint. Plaintiffs must address this apparent failure before they will be allowed to proceed at all against those Defendants. If Plaintiffs do not show cause by **January 16, 2012**,

///

///

///

the remaining aspects of the action will be dismissed without prejudice.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, December 22, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Teaupa et al. v. U.S. Nat'l Bank, N.A., et al.*, Civ. No. 10-00727 JMS/BMK, Order (1) Granting Defendant U.S. National Bank, N.A.'s Motion for Judgment on the Pleadings; (2) Denying Plaintiffs' Motion to Extend Settlement Conference and to Amend Complaint; and (3) Requiring Plaintiffs to Show Cause Why Action Should Not Be Dismissed Without Prejudice as to Non-served Defendants